UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAMON BLACKMAN,

                      Petitioner,

                                                      **MEMORANDUM and ORDER**

— against —

                                                      06-CV-855 (SLT) (SMG)

ROBERT ERCOLE, Superintendent,

                      Respondent.
----------------------------------------------------------------X

**TOWNES, United States District Judge:**

      On July 21, 2003, Damon Blackman ("Petitioner") was convicted after a jury trial of robbery in the first degree. On September 29, 2003, the trial court sentenced Petitioner to a prison term of ten years. The conviction was affirmed on appeal by the New York Appellate Division in *People v. Blackman*, 789 N.Y.S.2d 57 (N.Y. App. Div. 2004). By *pro se* petition filed February 22, 2006, Petitioner now seeks a writ of habeas corpus under 28 U.S.C § 2254. For the reasons stated below, this petition for habeas relief is denied.

## BACKGROUND

      On June 17, 2002, Maurice David took Sharon Forde and her two children to Coney Island, New York. David later returned Forde and her children to their home at 1680 Sterling Place in Brooklyn, New York. In the vestibule of Forde's building, David encountered Petitioner. Petitioner was unknown to David at the time and was Forde's ex-boyfriend. After a brief exchange with Petitioner, David left the vestibule and returned to his parked truck outside. At the truck, Petitioner pulled out a gun and, aided by an accomplice, took David's jewelry, car keys, and other property.

David then went to Forde's apartment. David told Forde and Forde's cousin, Michael Leach, who was present in the apartment, about the robbery. From David's description of the perpetrator, Leach recognized the robber to be Petitioner. David called 911 to report the crime. Seven days after the crime, on June 25, 2002, Detectives Patrick Coward and John Colwell found Petitioner at the corner of Fleet Street and Flatbush Avenue in Brooklyn and brought him to the precinct headquarters. After receiving his *Miranda* warnings, Detective Colwell told Petitioner he was under arrest for robbery and Petitioner replied, "I didn't rob anybody." Resp't Ex. A, Vol. III, Trial Tr. 94:3-4 (hereinafter, "Trial Tr."). Detective Colwell also inquired about a mark on his face and Petitioner replied that he gotten into a fight two weeks prior, at a club or bar, and he received a "black eye." *Id.* at 94:11-14. Petitioner testified in his defense at trial. He stated that he was at Forde's apartment vestibule on the night in question, but Petitioner claimed that David was the one who assaulted him and that no robbery occurred.

The jury convicted Petitioner of first degree robbery and he was sentenced to a term of ten years imprisonment. On appeal, the New York Appellate Division affirmed his conviction on December 27, 2004, and the New York Court of Appeals denied him leave to appeal that decision on February 25, 2005. Petitioner timely filed this petition for habeas corpus.

## DISCUSSION

### I. Legal Standards

#### A. Standard of Review

A federal court may "entertain an application for a writ of habeas corpus" on behalf of an individual in state custody pursuant to the judgment of a state court "only on the ground that he is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas

review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts will only grant a habeas petition based on a claim that is "adjudicated on the merits" in state court and the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). An "adjudication on the merits" is a substantive, rather than a procedural, resolution of a federal claim. *See Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001) (citations omitted). A state court has adjudicated a state petitioner's claim on the merits when it "(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Bell v. Miller*, 500 F.3d 149, 155 (2d Cir. 2007) (quoting *Sellan*, 261 F.3d 303 at 312).

Under § 2254(d)(1) - the "contrary to" clause -- a federal habeas court may grant the writ "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Court. *Bell v. Cone*, 543 U.S. 447, 452-53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Under § 2254(d)(2) - the "unreasonable application" clause -- a federal habeas court may grant the writ if the state court "'identifies the correct governing legal principle from Court's decisions but unreasonably applies that principle to the facts' of the petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)). Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal

law erroneously or incorrectly. Rather that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

B.  **Procedural Default**

Before reaching the merits of a habeas claim, a federal habeas court lacks jurisdiction to evaluate questions of federal law decided by a state court where the state court judgment "rests on a state law ground that is independent of the federal question and adequate to support the judgment," unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 729, 760 (1991); *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009).[1] This "independent and adequate state ground" doctrine is designed to "ensur[e] that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Thus, when a petitioner fails to properly raise his federal claims in state court, he deprives the state of "an opportunity to address those claims in the first instance" and frustrates the State's ability to honor his constitutional rights. *Id.* at 732, 748.

Consequently, when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim based on procedural default ordinarily qualifies as an independent and adequate state ground for denying federal review. *Acosta*, 575 F.3d at 184. Procedural default precludes habeas review when "the

---

[1] A petitioner can establish a "fundamental miscarriage of justice" through "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324-27, (1995). The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327. Nevertheless, the Supreme Court has emphasized that this exception must be "'rare' and be applied only in the 'extraordinary case.'" *Id.* at 299.

4

last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005) (quoting *Glenn v. Bartlett*, 98 F.3d 721, 724 (2d Cir. 1996)). Specifically, a state appellate court decision holding that an issue raised on appeal was not adequately preserved at trial may potentially bar federal habeas review. *Reyes v. Cunningham*, No. 07-CV-1044, 2009 WL 1146432, at *16 (S.D.N.Y. Apr. 28, 2009). Moreover, "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Id.* (quoting *Glenn*, 98 F.3d at 724). Thus, even when a state court says that a claim is "not preserved for appellate review" but then rules "in any event" on the merits, such a claim is procedurally defaulted. *Id.* (quoting *Glenn*, 98 F.3d at 725).

Nevertheless, before a state procedural bar may effectively bar federal habeas jurisdiction, courts must be satisfied that the specific procedural ground is "adequate to support the judgment." *See Monroe v. Kuhlman*, 433 F.3d 236, 240-41 (2d Cir. 2006); *see also Cotto v. Herbert*, 331 F.3d 217, 239 (2d Cir. 2003) ("[T]he question of when and how defaults in compliance with state procedural rules can preclude . . . consideration of a federal question is itself a federal question.") (internal quotation marks omitted). To satisfy this inquiry, federal habeas courts look to whether "the state rule at issue . . . is firmly established and regularly followed." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008) (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)). The inquiry focuses on "guideposts" found in *Cotto* measuring "the state interest in a procedural rule against the circumstances of a particular case," including: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether

5

state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Clark*, 510 F.3d at 391 (citing *Cotto*, 331 F.3d at 240).

## II. Admission of Victim's 911 Call

Petitioner first contends that the state trial court erroneously admitted into evidence an audiotape of Maurice David's 911 call as an "excited utterance" because such evidence violated the Sixth Amendment's Confrontation Clause. Petitioner presented this claim to the Appellate Division, which rejected it as procedurally barred and meritless. The Appellate Division held,

> The defendant failed to preserve for appellate review his contention that the Supreme Court erroneously admitted into evidence an audiotape of the complainant's telephone call to the 911 emergency number because it constituted hearsay and violated his constitutional right to confront a witness. In any event, his contention is without merit. The complainant's statements on the audiotape constituted an excited utterance because he remained under the stress of excitement caused by the robbery when he made the call.

*Blackman*, 789 N.Y.S.2d at 58 (citations omitted). The Appellate Division cited New York's contemporaneous objection rule, *see* N.Y. Crim. Proc. L. § 470.05(2), as the basis for Petitioner's default. *Blackman*, 789 N.Y.S.2d at 58. Under the contemporaneous objection rule, to perfect a proper appeal on a question of law, the party challenging a trial court ruling must register a protest "at the time of such ruling . . . or at any subsequent time when the court had an opportunity of effectively changing the same." N.Y. Crim. Proc. L. § 470.05(2); *see also People v. Lopez*, 71 N.Y.2d 662, 665 (N.Y. 1988) ("In order for there to be a question of law reviewable by [appellate courts], the trial court generally must have been given an opportunity to correct any error in the proceedings below at a time when the issue can be dealt with most effectively.").

6

Federal courts have recognized the "contemporaneous objection requirement" as "a firmly established independent and adequate state procedural bar" in general. *Gomez v. Brown*, No. 07-Civ. 9464, 2009 WL 2575916, at *6 (S.D.N.Y. Aug. 20, 2009); *see also Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.")).

Applying the *Cotto* guideposts, the contemporaneous objection rule is consistently and regularly followed for Confrontation Clause objections and, thus, provides an independent state procedural ground adequate to support the state court's judgment. The first *Cotto* guidepost – whether the procedural bar was relied upon by the state court – is generally inapplicable to the contemporaneous objection rule since the lack of an objection is rarely noted by a trial judge. *See Monroe*, 433 F.3d at 242. Even if Petitioner's defense counsel did object to the admission of the 911 audiotape, it would not have altered the judge's decision as this objection is meritless. *See People v. Dominick*, 862 N.Y.S.2d 520, 521 (N.Y. App. Div. 2008) (admitting 911 recording as an excited utterance). Second, the contemporaneous objection rule is well established for Confrontation Clause objections in New York state caselaw. *See People v. Alvarado*, 769 N.Y.S.2d 881, 882 (N.Y. App. Div. 2004) ("[A] Confrontation Clause argument requires a specific contemporaneous objection") (citing *People v. Kello,* 96 N.Y.2d 740, 743-744 (N.Y. 2001); *People v. Maher,* 89 N.Y.2d 456, 462-463 (N.Y. 1997)). Furthermore, federal habeas courts have recognized the contemporaneous objection rule as an independent and adequate state procedural bar for Confrontation Clause objections. *See Stewart v. Greene*, No. 05-Civ.-0566, 2009 WL 4030833, at *2 (S.D.N.Y. Nov. 19, 2009). Finally, Petitioner's counsel did not substantially comply with the rule and Petitioner cites no actual prejudice from or cause for his counsel's failure to timely object to the admission of the 911 audiotape.[2] The prosecutor played

---

[2] In a letter to this Court dated May 22, 2006, Petitioner acknowledges the difficulties in

the audiotape for the trial court and defense counsel during pre-trial proceedings and Petitioner's counsel lodged no objection or exception to the court's decision to admit the evidence under the excited utterance exception to the hearsay rule. Resp't Ex. A, Vol. II, Hr'g Tr. 6, 9-10, 112. Moreover, Petitioner has not shown a miscarriage of justice as his objection was meritless and no new evidence indicates his innocence. Accordingly, the Court finds Petitioner's Confrontation Clause claim procedurally barred from habeas review.

Even if the Court reached the merits of this claim, it would be denied. The Confrontation Clause applies only to testimonial statements. *Davis v. Washington*, 547 U.S. 813, 823 (2006). Statements made by a victim in a 911 call are ordinarily about events as they were actually happening, rather than describing past events, and they are primarily used by law enforcement to meet an ongoing emergency. *Id.* at 826-28. Consequently, 911 calls made primarily "to describe current circumstances requiring police assistance" are not "testimonial" and, therefore, are not subject to the Confrontation Clause. *Id.* at 814. Such is the case here and so the admission of the 911 audiotape was not "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d).[3]

## III. Introduction of Petitioner's "Black Eye"

Petitioner next challenges the introduction of evidence of Petitioner's "black eye" during his trial. First, in the prosecutor's opening statement, she stated that testimony from Sharon Forde will indicate that when David described one of the robbers as having a "black eye" to her, she realized that the robber must have been Petitioner because she knew Petitioner had a black

---

overcoming the Appellate Division's ruling of a procedural bar. In his letter, Petitioner states that he will "try to overcome the procedural bar [he is] currently facing, by showing Cause and Prejudice." Nevertheless, Petitioner submitted no further documents or arguments to this Court. Thus, Petitioner failed to establish cause or actual prejudice.

[3] In Petitioner's direct appeal to the Appellate Division, he also challenged the admission of statements made by David on the 911 call that were not based upon his personal knowledge and statements made by Sharon Forde heard on the tape. The Appellate Division found these claims to be waived. *Black*, 789 N.Y.S.2d at 58. Petitioner did not raise these claims in this habeas petition and the Court finds them to be abandoned.

eye. This evidence was not introduced at trial, because Forde was not called as a witness. Second, during the People's case-in-chief, Detective Colwell testified that he asked Petitioner how he received the "black eye" and Petitioner replied that he received it in a "fight two weeks prior, at a club or bar." Trial Tr. 94:11-14. Petitioner contends the statement about the "black eye" was irrelevant to prove the robbery and that the statement was used to show Petitioner's propensity to violence. Third, the trial judge instructed the jury that the People contended that Petitioner's statements to Detective Colwell that he "didn't rob anybody" and that he received a black eye a week or two earlier in a fight as "inculpatory." *See id.* at 203:15-16. Petitioner argues that the statements were not an admission or confession and the instruction demonstrated the trial court's misunderstanding of the "black eye" evidence.

Petitioner also presented these claims to the Appellate Division, which held the claim procedurally barred and meritless. With respect to the Detective Colwell's testimony, the Appellate Division held,

> [T]he defendant failed to preserve for appellate review his contention that testimony regarding his black eye, elicited by the prosecution on its direct case, was irrelevant and overwhelmingly prejudicial in its tendency to show that he had a propensity for violence. In any event, the defendant's contention is without merit because the evidence regarding his black eye was relevant to the issue of identity and it did not necessarily show a propensity for violence.

*Blackman*, 789 N.Y.S.2d at 59 (citations omitted). The Appellate Division did not specifically address Petitioner's other claims, but concluded its decision by finding that "[t]he defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit." *Id.* Again, the Appellate Division found that Petitioner's counsel failed to comply with the contemporaneous objection rule in challenging the admission of the "black eye" evidence.

The contemporaneous objection rule has been well established for these claims under New York law. *See People v. Richard*, 645 N.Y.S.2d 644, 646-647 (N.Y. App. Div. 1996)

9

(applying rule to objection to prosecutor's summation); *People v Taylor*, 754 N.Y.S.2d 893, 894 (N.Y. App. Div. 2003) (applying rule to objections to admission of evidence of uncharged crime); *People v. Nenni*, 704 N.Y.S.2d 405, 407-08 (N.Y. App. Div. 2000) (applying rule to objection to court's jury instruction). Additionally, since the Appellate Division found these claims meritless under state law, compliance with the rule would not have altered the trial court's decisions here. Finally, Petitioner has not established cause for the default, actual prejudice or a fundamental miscarriage of justice. As Petitioner argued in his direct appeal, his opening statement admitted that he was present at the night in question and he had a fight with David. *See* Resp't Ex. B, Br. for Def./Appellant 22; Trial Tr. 17:20-21. Thus, the evidence of the "black eye" identifying Petitioner was cumulative.

Furthermore, even if the Court had jurisdiction to reach these claims, none of them would entitle Petitioner to habeas relief. First, a variance between a prosecutor's opening summary of anticipated evidence and the evidence actually presented at trial does not necessarily constitute constitutional error. *See Christodoulou v. Duncan*, No. 99-CV-1847, 2005 WL 990999, at *3 (E.D.N.Y. Apr. 14, 2005) (citing *Frazier v. Cupp*, 394 U.S. 731, 735-36 (1969)). Here, the trial court offered an instruction counseling the jury that the prosecutor's "arguments, remarks and summation" are not evidence, *see* Trial Tr. 186:17-19, and the jury can be trusted to follow such an instruction, *Christodoulou*, 2005 WL 990999, at *3.

Second, the introduction of improper evidence against a petitioner does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice." *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)). Where the prejudicial evidence is "probative of [an] essential element" in the case, its admission does not violate the petitioner's

right to due process. *Id.* (alteration original). Here, Petitioner's statement to Detective Colwell was admissible as identity evidence even though Petitioner admitted he was at the scene of the crime. Such evidence bolstered David's account of the events of that night as he accurately described his robber's appearance. *Cf. United States v. LaFlam*, 369 F.3d 153, 156-57 (2d Cir. 2004) (evidence of past drug use permissible to establish identity).

Finally, the judge's instruction regarding Detective Colwell's testimony did not violate federal law. "The adequacy of a state court's jury charge is a matter of state law and is not ordinarily grounds for habeas relief." *Fordham v. Ercole*, No. 07-CV-365, 2009 WL 4043092, at *6 (E.D.N.Y. Nov. 10, 2009). In order to secure habeas relief, Petitioner must overcome "the strong interest in preserving the finality of judgments, as well as the interest in orderly trial procedure." *Id.* (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 n.13 (1977)). Here, the judge only stated that the People "contend" that Petitioner's statements were "inculpatory." *See* Trial Tr. 203:15-16. This statement was factually true and the judge did not instruct the jury to consider the statements as an admission or confession. Thus, none of these rulings were "contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d).

## IV. *Sandoval* Ruling

Next, Petitioner contends that the trial court erred in its *Sandoval* ruling[4] which allowed the prosecutor to inquire about prior allegations of misconduct by Petitioner which included threatening, punching, and choking Forde on May 26, 2002, and a misdemeanor marijuana conviction. Petitioner raised this claim with the Appellate Division, which held it procedurally barred and meritless.

---

[4] Established in *New York v. Sandoval*, 34 N.Y.2d 371 (N.Y. 1974), under New York law, a *Sandoval* hearing "is to provide the defendant with an advance ruling on whether the People will be permitted to cross-examine him or her about particular criminal (charged or uncharged), vicious, or immoral conduct for the purpose of impeaching credibility should he or she testify at trial." *People v. Morales*, 764 N.Y.S.2d 104, 106 (N.Y. App. Div. 2003).

> The defendant also failed to preserve for appellate review his contention that the Supreme Court improperly allowed the prosecution to cross-examine him regarding a marijuana conviction and prior bad acts which occurred on May 26, 2002. In any event, his contention is without merit, as his prior conviction and prior bad acts were probative on the issue of the defendant's credibility and his willingness to place his own interests before the interests of society. The probative value of this evidence outweighed any potential for unfair prejudice, especially in view of the limitations placed upon the prosecutor's questioning by the Supreme Court. Moreover, the prosecutor's questions regarding the defendant's prior bad acts did not violate the defendant's privilege against self-incrimination since those acts were not the subject of a pending, unrelated criminal charge.

*Blackman*, 789 N.Y.S.2d at 59.

Once again, the Appellate Division's application of the procedural bar is appropriate in this case. *See People v Batista*, 771 N.Y.S.2d 662, 662 (N.Y. App. Div. 2004); *People v Villanueva*, 734 N.Y.S.2d 906 (N.Y. App. Div. 2001); *People v Brito*, 578 N.Y.S.2d 607, 608 (N.Y. App. Div. 1992); *People v Kim*, 567 N.Y.S.2d 119, 119 (N.Y. App. Div. 1991) (applying contemporaneous objection rule to *Sandoval* hearings). Furthermore, for the reasons stated by the Appellate Division, the trial court's *Sandoval* ruling was not erroneous under state law. Thus, perfect compliance with the procedural rule would not have altered the judge's decision and he cannot prove cause, actual prejudice or a fundamental miscarriage of justice.

Since the Court accepts the Appellate Division's adequate and independent ground for dismissal of this claim, the Court need not reach whether the Appellate Division's holding is contrary to clearly established law. Ordinarily, state court rulings on evidentiary matters are matters of state law and "are not reviewable by a habeas court unless the errors alleged are so prejudicial as to constitute fundamental unfairness." *Rosario v. Kuhlman*, 839 F.2d 918, 924-25 (2d Cir. 1988). Indeed, "the admission of prior convictions for the purpose of impeaching the defendant has been characterized as evidentiary in nature and is therefore not redressable in a federal habeas corpus proceeding absent a showing that the particular errors were of

constitutional magnitude." *Jenkins v. Bara*, 663 F.Supp. 891, 899 (E.D.N.Y. 1987) (citing *Gilmore v. Curry*, 523 F.Supp. 1205, 1208 (S.D.N.Y. 1981)). Nothing in the record counsels deviating from these principles and thus the Court rests on this claim's procedural bar.

V.     **Defendant's Right to Remain Silent**

Petitioner next argues that his Fifth Amendment right against self-incrimination was violated during cross-examination when the prosecutor questioned his silence after his arrest and again when she raised his silence in her summation. First, in response to Petitioner's contention that no robbery occurred on June 17, 2002, but instead there was only a fight between him and David, the prosecutor inquired as to whether Petitioner ever called the police after he was allegedly punched by David.[5] Then, the prosecutor questioned Petitioner on his statements to Detective Colwell at the police precinct after he was informed that he was arrested for robbery. She asked, "Wouldn't you think that would be a good time to say[,] hey, the guy beat me up, that's not what happened." Trial Tr. 132:21-22. To which, Petitioner responded, "Excuse me. Could you go back[?] I don't understand what you mean." *Id.* at 132:23-24. Finally, during summation, the prosecutor made the following statement:

> He's at a precinct. He's been picked out of a line up. He is charged with a felony. Isn't that a perfect opportunity to say; hey, detective, I got this black eye from the fight because that's what it was, but is that what he says? No, he doesn't say anything.

---

[5] The prosecutor's exchange began as follows:

> Q: Did you get any medical treatment?
> A: No, I didn't. I just got some ice and I laid down.
> Q: Did you ever call the police?
> A: No, I did not.
> > Q: So this guy who is meeting your girlfriend punches you and you never call the [police]?
> A: No, I did not.

Trial Tr. 127:16-23.

13

*Id.* at 179:13-18. Petitioner contends that a criminal defendant may not be impeached with his silence and the prosecutor's questions and statements violated his right against self-incrimination.

Petitioner presented this claim to the Appellate Division, but the court did not specifically address it. Instead, this claim would fall into the court's catch-all ruling that "[t]he defendant's remaining contentions are unpreserved for appellate review and, in any event, without merit." *Blackman*, 789 N.Y.S.2d at 59 (citations omitted). Respondent argues that this claim is, thus, procedurally barred since neither Petitioner nor his counsel objected to these questions and statements at trial. Nevertheless, it is well established that an exception to the contemporaneous objection rule exists for the use of a criminal defendant's privilege against self-incrimination for impeachment purposes. *See People v. McLucas*, 15 N.Y.2d 167 (N.Y. 1965). Indeed, the Second Circuit has recognized that "the use of a criminal defendant's exercise of his privilege against self-incrimination against him at trial is considered a constitutional violation so fundamental that no objection is necessary to preserve such a claim as an issue of law for appellate review." *Hawkins v. LeFevre*, 758 F.2d 866, 872-873 (2d Cir. 1985). In practice, this exception means that when a constitutional claim is raised before the Appellate Division, which then affirms without opinion, courts will presume that the constitutional claim was decided on the merits rather than on a procedural default. *Boykins v. Kelly*, No. 87 CIV. 6608, 1990 WL 52294, at *3 (S.D.N.Y. Apr. 13, 1990) (collecting cases). Thus, the Court must presume that the Appellate Division's affirmance was based on the constitutional merits of this claim rather than on procedural grounds and, consequently, it was sufficiently "adjudicated on the merits" to apply AEDPA's standards of review. *See Sellan*, 261 F.3d at 311-12 (observing that "[n]othing in the

phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process").

With regard to the prosecutor's questioning of Petitioner's failure to notify the police of the alleged fight between him and David on cross-examination, no violation of federal law occurred. In *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980), the Supreme Court held that the use of pre-arrest silence to impeach a criminal defendant's credibility did not violate the Fifth Amendment and did not deny the fundamental fairness that the Fourteenth Amendment guarantees. "[I]mpeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial." *Id.* Thus, under *Jenkins*, the prosecution may elicit testimony regarding the pre-arrest silence of a defendant as long as the actions of the police did not coerce his silence and he had not received his *Miranda* warnings. *See United States v. Murtaugh*, No. 5:08-CR-184, 2009 WL 2405899, at *4 (N.D.N.Y. Aug. 3, 2009). Here, in an attempt to impeach Petitioner's testimony, the prosecutor inquired as to why Petitioner did not call the police after he testified that David assaulted him on June 17, 2002. *See* Trial Tr. 115:18-24; 116:3-19; 126:16-18; 127:10-23. On the night of the robbery, Petitioner was not under arrest nor was he read his *Miranda* rights and thus his silence was not coerced under *Jenkins*. Indeed, the prosecutor's questioning echoes the same questions that Petitioner's own counsel asked on direct examination. *See id.* at 116:15-16 ("Mr. Blackman, at that point when you went back to your car; why didn't you call the police?"). Accordingly, this line of questioning did not violate clearly-established law.

The prosecutor's question directed toward Petitioner's failure to raise the fight *after* his arrest and her highlighting of this silence during summation is a different matter. "A prosecutor engages in the unconstitutional use of silence against a defendant when the 'fact of [the

15

defendant's] post-arrest silence [is] submitted to the jury as evidence from which it [is] allowed to draw any impermissible inference.'" *Farakesh v. Artuz*, No. 99-CV-3945, 2000 WL 1480896, at *9 (E.D.N.Y. Oct. 3, 2000) (quoting *Greer v. Miller*, 483 U.S. 756, 764-65 (1987)) (alterations in original). In *Doyle v. Ohio*, the Supreme Court established the rule that *Miranda* warning's "implicit" assurance that "silence will carry no penalty" rendered it "fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. 610, 618 (1976). In *Doyle*, after one of two defendants was arrested by police on a drug charge, his only statement to the police was "I don't know what you are talking about" or "What's this all about?" 426 U.S. at 614 n.5. After this defendant took the witness stand and testified to being framed for the crime, the prosecutor attempted to impeach his explanation of events by questioning his failure to raise this defense after his arrest. The prosecutor asked, "[Y]ou didn't protest your innocence at that time?" and "You said nothing at all about how you had been set up?" *Id.* The Court reversed the defendant's conviction explaining that "it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony[.]" *Id.* (quoting *United States v. Hale*, 422 U.S. 171, 182-83 (1975)). Thus, a prosecutor may not use a defendant's post-arrest, post-*Miranda* silence to impeach an explanation subsequently offered at trial. *See United States v. Casamento*, 887 F.2d 1141, 1179 (2d Cir. 1989).

The Court finds that the prosecutor's question to Petitioner regarding his failure to raise the fight with David after his arrest, coupled with her comment during summation, amounts to a *Doyle* violation. Similar to *Doyle*, Petitioner expressed a single exculpatory statement upon his

16

arrest, "I didn't rob anybody," Trial Tr. at 94:3-4, 6-7, and nothing more (aside from comments on where he received his "black eye"). The fact that he remained silent regarding his version of events upon his arrest could not then be used to impeach his exculpatory story at trial because of the assurances accorded by the *Miranda* warning.

Respondent relies on *Anderson v. Charles,* 447 U.S. 404 (1980), for the proposition that a prosecutor can question a defendant on the stand about any post-arrest, post-*Miranda* statements that the defendant has made. In *Anderson*, the Court explained that

> *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. . . . The questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.

447 U.S. at 408. Nevertheless, Petitioner's statement to Detective Colwell that he "didn't rob anybody" is not inconsistent with his explanation at trial that David assaulted him in Forde's apartment building. Thus, *Anderson* does not apply here. *See Casamento,* 887 F.2d at 1179 ("Indeed, for purposes of analysis under *Doyle,* even if a defendant has made statements to the police after receiving *Miranda* warnings, he is deemed to have maintained his silence, unless the post-arrest statements are inconsistent with the defendant's testimony at trial.").[6]

The heart of the prosecutor's question and summation was not meant to draw out any inconsistency in Petitioner's statements after his arrest, but to highlight what Petitioner *failed* to say upon arrest to cast doubt on his testimony. It is impermissible to draw such an inference from Petitioner's constitutionally protected silence and thus the prosecutor's actions amount to a due process violation.

---

[6] If the prosecutor was attempting to elicit Petitioner's explanation for his inconsistent statements about his "black eye," she may have done so. Nevertheless, her question and summation were clearly directed at Petitioner's post-arrest silence about his alibi on the stand, not about his inconsistencies on the origin of his "black eye."

17

Nevertheless, this is not the end of the inquiry. It is well established that *Doyle* violations are subject to harmless error analysis, where the Court must determine if the constitutional error was harmless beyond a reasonable doubt. *See Grigg v. Phillips*, No. 04-CV-0663, 2009 WL 2983030, at *9 (E.D.N.Y. Sept. 11, 2009); *Leecan v. Lopes*, 893 F.2d 1434, 1442 (2d Cir. 1990); *Casamento*, 887 F.2d at 1180; *Hawkins*, 758 F.2d at 878. After reviewing the transcript and the evidence in this case, the Court finds that the prosecutor's *Doyle* violation was harmless. In this case, Petitioner conceded that he was in the vestibule of Forde's apartment on June 17, 2002, and that he encountered Maurice David, the complainant in this case. Trial Tr. 114:22-115:24. David testified that Petitioner robbed him at gunpoint shortly thereafter and took all his jewelry and car keys. *Id.* at 34-39. This testimony was corroborated by Michael Leach, who was in Forde's apartment at the time and testified that David was "hysterical" and that his jewelry was missing after he returned from the apartment's vestibule. *Id.* at 81:11; 82:6; 86:23-87:8. The jury also heard a recording of David's call to 911 that night describing how he was robbed at gun point. *Id.* at 48:6. Although Petitioner claims that only a fight took place that night, David did not have any injuries consistent with a fight. Based on the inconsistencies in Petitioner's testimony, the corroboration of David's eyewitness account, and the record as a whole, the prosecutor's one improper question and her related summation remarks did not alter the jury's verdict and was harmless beyond a reasonable doubt. Accordingly, Petitioner's petition for habeas relief on this claim is denied.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for the writ of habeas corpus is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
      December 14, 2009

                                                                                         /S/
                                                  SANDRA L. TOWNES
                                                  United States District Judge